[Civ. No. 63274. Second Dist., Div. Three. July 28, 1982.]

DENNIS C. DAKINS, Plaintiff and Appellant, v.
BOARD OF PENSION COMMISSIONERS OF THE CITY OF
LOS ANGELES, Defendant and Respondent.

**COUNSEL**

Lewis, Marenstein & Kadar and Michael T. Roberts for Plaintiff and Appellant.

Ira Reiner, City Attorney, Siegfried O. Hillmer, Assistant City Attorney, Mary Jo Curwen and Beverly E. Mosley, Deputy City Attorneys, for Defendant and Respondent.

**OPINION**

**LUI, Acting P. J.—**

### Statement of the Case

Appellant Dennis Dakins appeals from the judgment of the Superior Court of Los Angeles County denying his petition for writ of mandate. The question presented in this appeal is whether the Workers' Compensation Appeals Board's (WCAB) findings and award determining that appellant's psychiatric injury was sustained in the course of his employ-

ment was binding on the respondent Board of Pension Commissioners of the City of Los Angeles (Board). For the reasons stated below, we conclude that the doctrine of collateral estoppel is applicable and therefore the WCAB's determination of appellant's work-related injury is binding on the respondent Board.

*Facts*

Appellant was an employee of the Los Angeles Police Department and a member of the City of Los Angeles (City) new pension system for firefighters and police officers, created and established by and under the provisions of article XVIII of the Charter of the City of Los Angeles (Charter). Appellant first began his employment on March 24, 1968, and continued his employment until August 6, 1979.

The City is a municipal corporation which is organized with several departments. The department of pensions is under the control and management of a seven member Board which consists of five persons appointed by the mayor, subject to the approval of the city council, and two additional persons elected by the fire and police departments, respectively. The Board administers the fire and police pension system for the City and has exclusive control of the administration of the pension funds which are invested pursuant to requirements set forth in the Charter or maintained in the City's treasury. A 1967 Charter amendment established the "New Pension System." Fire and police officers employed prior to 1967 are members of the fire and police pension system set forth in article XVII of the Charter.

Appellant alleges in his petition for writ of mandate that between March 24, 1968, and August 6, 1979, while acting in the course and scope of his employment as a police officer for the City, he sustained a psychiatric illness consisting of anxiety.

Appellant filed an application for the adjudication of his compensation claim with the WCAB on August 16, 1979. The adjudication of the claim before the WCAB pertaining to his claimed psychiatric injury resulted in a findings and award dated January 8, 1980, which contained the following pertinent findings of fact: "2. Dennis C. Dakins born August 5, 1941, while employed during the period of time March 24, 1968 through August 6, 1979, as a police officer, by City of Los Angeles, Legally Uninsured, sustained an injury *arising out of and occurring in the course of his employment consisting of anxiety.* [¶] 3.

The injury herein caused continuing temporary total disability from August 7, 1979 through December 4, 1979 and thereafter for which indemnity is payable at $154.00 per week. [¶] 4. Medical treatment is required to cure or relieve from the effects of this injury." (Italics added.)

Prior to the WCAB's issuance of its findings and award, appellant had filed an application with the Board on November 15, 1979, for a disability pension, stating that his disability was "mental stress, anxiety." Pursuant to Charter article XVIII, section 190.12(c),[1] appellant was examined by three physicians, all of whom were psychiatrists. Subsequently, a Board hearing was conducted on July 10, 1980. Appellant appeared with counsel and testified before the Board. At the hearing, counsel for appellant made the following statement as part of his argument before the Board: "So when you look at the entire picture of medical opinion, you look at his testimony and the facts, the lack of outside sources, the fact that he has already had a Workers' Compensation proceeding which has determined this situation being work related, I think when you look at all of that, you have to conclude that it is a service-connected situation and that he is disabled from returning to work in any capacity. . . ." There was no other reference to or argument concerning the res judicata effect of the WCAB findings and award on the appellant's application for disability before the Board.[2]

---

[1]Charter, article XVIII, section 190.12(c), provides, in pertinent part as follows: "(c) Determination of Disability. Upon the filing of any written application or request for a disability pension, as referred to in subsections (a) and (b) of this section, the Board: (1) shall cause the System Member to be examined by and a written report thereon rendered by at least three regularly licensed and practicing physicians selected by it; (2) shall hold a hearing with respect to such application or request; and (3) shall receive or hear such other evidence relating to or concerning the System Member's disability or claimed disability as may be presented to it. The Board shall have the power to hear and determine all matters pertaining to the granting and denying of any such application or request for a disability pension. The Board first shall determine whether or not the System Member is incapable of or from performing his duties as a Department Member. If the Board were to determine that he is not so incapable, it then shall be the duty of the Board to deny the application or request. If the Board were to determine that he is so incapable, it then shall determine, pursuant to the language used in subsections (a) and (b) of this section, whether his incapacity or disability is service-connected or nonservice-connected. If the Board were to determine that it is service-connected, it then shall determine the percentage of his incapacity or disability, within the limitations prescribed in subsection (a) of this section, and shall grant the application or request accordingly. If the Board were to determine that it is nonservice-connected, it then shall determine whether his incapacity or disability was due to or cause [sic] by the moral turpitude of the System Member. . . ."

[2]Counsel have provided us with a stipulation to this effect in response to our inquiry as to the manner in which appellant asserted and argued that the WCAB findings and award were res judicata on the issues before the Board.

At the conclusion of the hearing, the Board voted, by a five-to-two decision, in favor of the motion by one of the Board members that the appellant's "incapacity was caused by reason of sickness other than sickness caused by the discharge of his duties as a member of the Police Department and that it be the determination of the Board that Dennis C. Dakins be granted a nonservice-connected disability pension."

The Board's finding of fact No. 7 states: "That the Board of Pension Commissioners found that [appellant's] illness is not industrially caused and granted the [appellant] a nonservice-connected disability pension having found the [appellant] to be disabled."

At the regular meeting of the respondent Board on August 28, 1980, the Board made its final decision on appellant's application and formally adopted the findings of fact.

On October 10, 1980, appellant filed a petition for writ of mandate with the court below seeking to compel the Board to grant him a service-connected disability pension. In his points and authorities in support of a petition for writ of mandate, appellant argued that the WCAB findings and award were res judicata and therefore binding on the Board regarding the issue of causation of disability. The matter was argued and submitted to the court below. Exercising its independent judgment, the trial court found that the weight of the evidence supports the Board and denied the appellant's petition for writ of mandate. Neither the trial court's findings of fact and conclusions of law nor judgment mentions the WCAB findings and award. Appellant filed a timely notice of appeal.

*WCAB Findings and Award Are Res Judicata in Subsequent Pension Board Proceedings*

Article XIV, section 4, of the California Constitution provides that the Legislature is "vested with plenary power, unlimited by any provision of this Constitution, to create, and enforce a complete system of workers' compensation, by appropriate legislation, ..." This power includes the provision "for the settlement of any disputes arising under such legislation by arbitration, or by industrial accident commission, by the courts, or by either, any, or all of these agencies, either separately or in combination, and may fix and control the method and manner of trial of any such dispute, the rules of evidence and the manner of review of decisions rendered by the tribunal or tribunals designated by it; pro-

vided, that all decisions of any such tribunal shall be subject to review by the appellate courts of this State...."

Pursuant to section 5301 of the Labor Code,[3] the WCAB is "vested with full power, authority and jurisdiction to try and determine finally all the matters specified in Section 5300 subject only to the review by the courts as specified in this division." Section 5300 provides that proceedings "[f]or the enforcement against the employer ... of any liability for compensation imposed upon him by this division [§§ 3201 to 6208] in favor of the injured employee, ..." shall be instituted before the WCAB. Section 3600 establishes employer liability "[w]here, at the time of the injury, the employee is performing service growing out of and incidental to his employment and is acting within the course of his employment."

■ The WCAB (formerly the Industrial Accident Commission) is a constitutional court. Accordingly, its final decisions are given res judicata effect. (*French* v. *Rishell* (1953) 40 Cal.2d 477, 480 [254 P.2d 26], *Scott* v. *Industrial Acc. Com.* (1956) 46 Cal.2d 76, 83 [293 P.2d 18]; and 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 159, p. 3303.)

Appellant's workers' compensation claim was adjudicated in two parts, resulting in separate awards. An award was issued on June 22, 1979, compensating appellant for permanent injuries of 15 percent; this award was made pursuant to a written form entitled "STIPULATION WITH REQUEST FOR AWARD" entered into between appellant's counsel and counsel for the City. The stipulation was to the effect that appellant sustained an injury consisting of "hypertension" which arose out of and in the course of his employment as a police officer for the City.

Subsequently, a hearing was conducted on December 4, 1979, in connection with appellant's claim of psychiatric injuries of "anxiety" arising out of and occurring in the course of his employment. This hearing resulted in the previously mentioned findings and award of January 8, 1980, which found appellant's injuries of anxiety to be work-related and compensable. Appellant contends that the WCAB findings and award are binding on the Board. We agree.

---

[3]Hereinafter, all references shall be to the Labor Code unless otherwise specified.

■ "The doctrine of res judicata precludes parties or their privies from relitigating a cause of action that has been finally determined by a court of competent jurisdiction. Any issue necessarily decided in such litigation is conclusively determined as to the parties or their privies if it is involved in a subsequent lawsuit on a different cause of action. [Citations.] The rule is based upon the sound public policy of limiting litigation by preventing a party who has had one fair trial on an issue from again drawing it into controversy. [Citations.] The doctrine also serves to protect persons from being twice vexed for the same cause." (*Bernhard v. Bank of America* (1942) 19 Cal.2d 807, 810-811 [122 P.2d 892].)

■ "In determining the validity of a plea of res judicata three questions are pertinent: Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?" (*Id.*, at p. 813.)

In *French v. Rishell, supra*, 40 Cal.2d 477, Beatrice French, the widow of a captain of the Oakland Fire Department, sought to compel the City of Oakland and its board of trustees of the firemen's relief and pension fund to pay her a pension pursuant to provisions of the city charter. In a prior proceeding before the Industrial Accident Commission, French asserted that her husband's death resulted from a heart attack. The commission, in making its award, found that her husband's death proximately resulted from an injury occurring in the course of and arising out of his employment. She made an application to the pension board pursuant to the city charter which provided for the payment of a pension to the family of a member of the fire department who dies as a result of an injury or disability incurred while in the performance of his duty. The pension board denied the application and she commenced proceedings in mandamus. The city failed to seek any review of the Industrial Accident Commission's award which became final. The question on appeal was whether the decision of the Industrial Accident Commission was res judicata and binding on the pension board. Our Supreme Court held that the Industrial Accident Commission exercises adjudicatory functions and has the power to make final determinations on questions of fact. It rejected the city's contention that res judicata should not be applied in cases like *French* because the plaintiff's burden of proof was less before the Industrial Accident Commission than it was

before the pension board. Section 3212 provided for a presumption, in the absence of contrary evidence, that heart trouble which manifests itself during a city fireman's employment arose out of and in the course of employment. This section was applicable to the workers' compensation proceedings, but perhaps was not available to French before the pension board. Our Supreme Court concluded that the difference in burden of proof did not justify any exceptions to the general rule of res judicata. The court concluded, citing 2 Freeman on Judgments (5th ed.), section 641, pages 1349-1350, that "'[i]n order that an adjudication in one court or tribunal should be regarded as res judicata upon the matters there determined when they come again in question in another tribunal, it is obviously not necessary that the same rules of law, practice or evidence should prevail in both tribunals. The attempt to impose any such limitation would defeat the whole purpose of the rule.... All that is essential therefore is that a party should have been given one opportunity for the judicial determination of an issue by a tribunal having the requisite authority and proceeding in a manner recognized as due process of law.' [Citation.] The Industrial Accident Commission, from its early days, has not been bound by common law or statutory rules of evidence and procedure, and, in addition to being allowed to receive hearsay evidence and to proceed informally, it has been authorized and permitted to adopt decidedly less stringent rules and regulations. [Citations.] Despite these procedural differences, there are, as we have seen, a number of cases in which the doctrine of res judicata has been applied to determinations of the commission." (*French, supra*, 40 Cal.2d at p. 481.) The court concluded that it was immaterial that the pension board was not a party to the workmen's compensation proceedings. The city was a party in the appeal as well as the prior proceedings below. Under the city charter, the pension board acts as an agent of the city, and, in this representative capacity, is bound by the Industrial Accident Commission's decision if the city is bound.

In *Greatorex* v. *Board of Administration* (1979) 91 Cal.App.3d 54 [154 Cal.Rptr. 37], the Court of Appeal for the Fourth District decided an appeal which closely parallels the instant case. Greatorex had a heart attack while employed as a fireman by the City of San Diego. He applied to the WCAB for compensation benefits. The City of San Diego stipulated his injury was work-related. The appeals board subsequently adopted the stipulation and granted compensation benefits. Greatorex then applied to the Board of Administration of the City Employees' Retirement System for a service-connected disability allowance. This allowance is granted only if the injury is work-related. The

retirement board denied his application. Greatorex then petitioned the superior court for a writ of mandamus to set aside the retirement board's decision. He claimed the WCAB's determination of work-related injury was res judicata and that the retirement board was collaterally estopped from finding his injury was not work-related. The writ was denied and Greatorex appealed the denial asserting the same res judicata, collateral estoppel claim. The Fourth District stated: "For a claim of collateral estoppel to be valid there must be a final determination on the merits in the prior proceedings. [Citation.] When the [WCAB] took jurisdiction of the case, it necessarily decided Greatorex was employed and his injury was work related. . . .

"The Retirement Board contends the decisions of the [WCAB] are not final for five years, basing their contention on *De Celle* v. *City of Alameda* (1960) 186 Cal.App.2d 574 [9 Cal.Rptr. 549] and Labor Code sections 5803 through 5805. However, *De Celle* stands for the proposition that [a WCAB's] determination finding a work-related injury permanent, as opposed to temporary, is not final for five years. Under *De Celle* and the Labor Code, *decisions regarding the amount of the award and the permanence of the disability are not res judicata until the five-year period has lapsed. Those decisions, however, are distinct and separate from the jurisdictional findings of employment and work-related injury which become final after the 20-day reconsideration period has lapsed.*" (*Greatorex, supra,* 91 Cal.App.3d at p. 57.) (Italics added.)

The Board cites *Garrick* v. *Board of Pension Commissioners* (1971) 17 Cal.App.3d 243 [94 Cal.Rptr. 598]; as precedent contrary to *French* and *Greatorex*. However, this division's decision in *Garrick* is limited solely to the narrow issue of whether section 3212.5 is applicable to proceedings before the Board. (The pension board in *Garrick* is the same Board in this appeal.) Section 3212.5 creates a disputable presumption that heart trouble developing or manifesting itself during the service of a member of a city police department, who has served at least five years, arose out of such service; this presumption may be controverted by other evidence. Our decision in *Garrick* holds only that the presumption under section 3212.5 is not available in proceedings before the Board because of an absence of a clear legislative intent to so provide. Respondent Board contends that the *French* and *Greatorex* decisions should only be given res judicata effect in cases involving heart-related injuries. We do not read the *French* and *Greatorex* decisions to be so

limited.[4] Instead, the principles set forth in *French* and *Greatorex* seem equally applicable regardless of the nature of the injuries and whether they be physical or psychological.

■ "The doctrine of *res judicata* gives certain *conclusive effect* to a *former judgment* in subsequent litigation involving the same controversy." (4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 147, p. 3292.) (Italics in original.) "In a new action on the same cause of action a prior judgment for the defendant acts as a complete bar to further litigation, and a prior judgment for the plaintiff precludes litigation because it results in a merger, superseding plaintiff's claim by a right of action on the judgment. [Citation.] ■ In a new action on a different cause, the former judgment is not a complete merger or bar, but is effective as a collateral estoppel, being conclusive on issues actually litigated in the former action. [Citation.]" (*Jackson v. City of Sacramento* (1981) 117 Cal.App.3d 596, 601 [172 Cal.Rptr. 826].)

Collateral estoppel is a distinct aspect of the doctrine of res judicata. In the present case, we are not faced with the merger or bar aspects of res judicata. Instead, we are concerned with the application of collateral estoppel. The appellant's cause of action for a service-connected disability pension is not the same cause of action as his claim for workers' compensation benefits. Consequently, we must decide whether the factual findings of the WCAB are binding on the Board. If collateral estoppel applies, the WCAB findings and award would be conclusive on all issues which were litigated or which could have been raised and litigated in the WCAB action. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 148, p. 3293; and *Busick* v. *Workmen's Comp. Appeals Bd.* (1972) 7 Cal.3d 967, 975 [104 Cal.Rptr. 42, 500 P.2d 1386].)

---

[4]The Board's further reliance on *Pathe* v. *City of Bakersfield* (1967) 255 Cal.App.2d 409 [63 Cal.Rptr. 220], is equally misplaced. In *Pathe*, the respondent fireman was granted a service-connected disability pension by the city's retirement board prior to the issuance of a workmen's compensation award which ruled that his injury was not service connected. The *Pathe* decision rejects the retirement board's attempt to apply *retrospectively* a subsequent workmen's compensation award so as to modify Pathe's pension to a nonservice-connected disability allowance and states: "[W]e shall now consider appellants' ... contention that the [Industrial Accident Commission's] decision nevertheless applied retrospectively to the earlier decision of the retirement board under the doctrine of res judicata. We conclude that this contention is entirely without merit. Such a holding would be contrary to the very purpose of the doctrine, which is to bring an end to litigation." (*Id.*, at p. 417.) *Pathe* has no bearing on the present appeal.

■ We conclude that the requirements for application of collateral estoppel were present in plaintiff's application before the Board. First, the essential issue decided in the WCAB proceedings regarding whether appellant's injuries arose out of and in the course of employment was the identical issue litigated before the Board, albeit termed "service connected" under Charter article XVIII, section 190.12, subdivision (a).[5]

Secondly, there was a final judgment on the January 8, 1980, WCAB findings and award which neither side petitioned the WCAB for reconsideration and review. Accordingly, the award became final and conclusive and is entitled to res judicata and collateral estoppel effect as to the jurisdictional findings of employment and work-related injury after the 20-day reconsideration period lapsed, pursuant to section 5903. (See *Greatorex, supra*, 91 Cal.App.3d at p. 57.)

Thirdly, the parties to the WCAB proceedings and the Board proceedings were identical. The City was a party to the WCAB proceedings. The Board administers the City's department of pensions and thus acts as the agent for the City. As the City was bound by the WCAB proceedings, the Board in its representative capacity was similarly bound. The facts of the instant case are distinguishable from *Summerford* v. *Board of Retirement* (1977) 72 Cal.App.3d 128 [139 Cal.Rptr. 814]. In *Summerford*, the Santa Barbara County Employees' Retirement Association (retirement board) was formed pursuant to the 1937 County Employees' Retirement Law, Government Code section 31450

---

[5]Charter article XVIII, section 190.12, subdivision (a), states in pertinent part as follows: "(a) Service-Connected Disability. Upon the filing of his written application for a disability pension or upon the filing of a written request therefor by or on behalf of the head of the department in which he is a Department Member, any System Member whom the Board shall determine has become physically or mentally incapacitated by reason of injuries received or sickness caused by the discharge of the duties of such person as a Department Member, and who is incapable as a result thereof from performing his duties, shall be retired by order of the Board from further active duty as a Department Member. Such Retired Member shall be paid thereafter and for life a monthly service-connected disability pension in an amount which shall be equal to the same percentage of his Normal Pension Base as the Board shall determine, from time to time, to be his percentage of disability. Such pension shall be in an amount not less than 50 % and not more than 90 % of such Retired Member's Normal Pension Base and not less than that percentage thereof which he, if he shall have had 25 years of service or more at the time of his retirement pursuant to his subsection of this section, would have received had he retired pursuant to Section 190.11, provided, however, that such pension may and shall be reduced, pursuant to Section 190.15, to an amount less than either or both of the aforementioned minimum amounts if the application of said section were to cause such result. . . ."

et seq. The county employees' retirement associations created under the 1937 act are organizations totally distinct from the county. (*Flaherty* v. *Board of Retirement* (1961) 198 Cal.App.2d 397 [18 Cal.Rptr. 256].) Thus, in *Summerford*, while the county was represented in WCAB proceedings, the retirement board was not. Therefore, the findings of the WCAB regarding the claimant's injury were not binding on the retirement board.

In the proceedings before the Board, appellant testified that he "was awarded a Workmen's Comp award" sometime in January 1980. A copy of the January 8, 1980, findings and award was before the Board during its deliberations and is contained in the administrative record of the Board proceedings. Appellant's counsel argued that the workers' compensation proceedings had determined appellant's injuries as being "work-related" and that the Board should conclude that his injuries were "service-connected." Neither party on appeal has addressed the issue as to the manner in which collateral estoppel must be pleaded, asserted or argued. ■ "In the case of collateral estoppel, however, it has been held that no special plea is required on the theory that such an estoppel merely involves conclusive evidence of a fact in issue, i.e., some fact constituting either matter of defense or an element of a cause of action, rather than a complete defense to the action. [Citations.]" (*Solari* v. *Atlas-Universal Service, Inc.* (1963) 215 Cal.App.2d 587, 592-593 [30 Cal.Rptr. 407].) ■ Appellant's counsel's assertion of a collateral estoppel effect of the WCAB findings and award on issues before the Board was admittedly weak. However, counsel did sufficiently present evidence to the Board that a prior WCAB determination had been made on the subject of appellant's work-related injury. Appellant himself testified to this effect and counsel argued to the Board that it should "conclude that it is a service-connected situation." We find counsel's representation to be sufficient to raise the issue of collateral estoppel to the Board. We note that neither the Board's findings of fact nor the superior court's findings of fact and conclusions of law mention the WCAB's findings and award.

Based on our above analysis, we hold that the Board was bound by the WCAB's prior determination on the issue of appellant's work-related injury. Since we have concluded that the Board was bound by the WCAB's findings and award, we need not address the remaining issues raised in appellant's brief.

The judgment denying the petition for writ of mandate is reversed. The superior court is directed to issue a writ of mandate compelling the Board to grant appellant a service-connected disability pension.

Potter, J., and Danielson, J., concurred.

A petition for a rehearing was denied August 24, 1982, and respondent's petition for a hearing by the Supreme Court was denied September 30, 1982.