[No. S090553. July 19, 2001.]

RODNEY SCOTT PEARL, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and BOARD OF
TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY, Respondents.

COUNSEL

Lemaire, Faunce, Pingel & Singer, Edward L. Faunce, Steven R. Pingel and Larry J. Roberts for Petitioner.

Joseph V. Capurro for California Applicants' Attorneys Association as Amicus Curiae on behalf of Petitioner.

Peter H. Mixon, Richard B. Maness, Kayla J. Gilland and Nathan D. Schmidt for California Public Employees' Retirement System as Amicus Curiae on behalf of Petitioner.

Neil P. Sullivan and Vincent Bausano for Respondent Workers' Compensation Appeals Board.

Carlos Cordova for Respondent Board of Trustees of the California State University.

OPINION

CHIN, J.—Petitioner Rodney Scott Pearl obtained disability retirement benefits from the Public Employees' Retirement System (PERS) for a job-related psychiatric injury. He subsequently petitioned the Workers' Compensation Appeals Board (WCAB) to determine whether the injury was industrial, entitling him to increased benefits. The WCAB, applying the substantive provisions of Labor Code section 3208.3, determined that the injury was nonindustrial. After considering the merits, the Court of Appeal denied Pearl's petition to review the WCAB's decision.

We conclude that Government Code section 20046, a provision of the Public Employees' Retirement Law, and not Labor Code section 3208.3, governs whether the disability of a PERS member is "industrial." Accordingly, we reverse the Court of Appeal's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Pearl worked as a police officer for California Polytechnic State University from April 1990 until July 1996. He applied for disability retirement, alleging cumulative workplace trauma for that period, including psychiatric injury caused by a series of incidents involving other officers and his supervisor.

The alleged incidents included a number of practical jokes played on Pearl, such as falsely informing him that he was the subject of an internal

affairs investigation, and that he had been turned down for a coveted position in a critical response unit. On another occasion, while Pearl was in a toilet stall, his supervisor set off a packet of firecrackers in the stall. In addition, fellow officers tampered with his equipment and car. Pearl also believed that his supervisor had given him an unfair performance evaluation that had damaged his career. During this period, Pearl also suffered family pressures, including his brother's spousal murder and suicide, which occurred shortly before Pearl began work at the university, and Pearl's own divorce and custody dispute.

In March 1997, PERS approved Pearl's retirement application. However, the determination was made without a finding whether the injury was industrial in character. Pursuant to Government Code section 21166, Pearl petitioned the WCAB for a finding of fact on the issue. The evidence presented at the hearing consisted of Pearl's deposition, performance evaluations, medical records, and the written opinions of two psychiatrists, Drs. Grattan and Wells. Dr. Grattan opined that the injury was not industrial: "Absent his employment with the Cal Poly campus police I believe Ms. Pearl [*sic*] would now present with seventy-five percent of a slight psychiatric disability." He ascribed "twenty-five percent [of the injury] to the actual events and perceived stresses in [Pearl's] work with the Cal Poly police department." Dr. Wells disagreed, opining that "cumulative trauma in the work place represented fifty-one percent or more of all causal factors."

Finding Dr. Grattan's report "well reasoned and indeed compelling," the workers' compensation judge made a factual finding that the disability was not industrial. He explained: "The sole question is whether or not applicant has sustained a disability which is or is not industrial. [¶] The undersigned equates this to whether or not there has been injury under Labor Code § 3208.3. . . . When one considers the magnitude of other outside problems that the applicant had, the undersigned is well convinced that applicant's work situation did not play a predominant role in his psychiatric condition."

Pearl petitioned for reconsideration, arguing in part that Government Code section 20046, not Labor Code section 3208.3, applies to a determination of industrial injury under the Public Employees' Retirement Law, and that the former provision required him to establish only that his injury arose out of and in the course of his employment. (Gov. Code, § 20046.) He further contended that his right to retirement benefits must be determined by the law in effect on the day he began his employment, which preceded subsequent amendments of Labor Code section 3208.3.

The workers' compensation judge recommended denial, on the ground that "[t]he Workers' Compensation Appeals Board must make findings in

accordance with the Labor Code." He also disagreed that Pearl's right to disability benefits vested at the time he began employment, concluding that "the rights to a certain cause of action are determined when that cause of action accrues." The WCAB issued an order denying reconsideration.

Pearl petitioned for review in the Court of Appeal, which summarily denied review. We then granted Pearl's petition for review and transferred the cause to the Court of Appeal.

The Court of Appeal denied the petition. It observed that under both psychiatric reports, Pearl's injury met the threshold of industrial causation stated under Government Code section 20046. However, it concluded that the Public Employees' Retirement Law did not state the applicable standard, but that Labor Code section 3208.3 determines whether Pearl's injury was industrial. The Court of Appeal reasoned that by amending Labor Code section 3208.3 to raise the threshold for industrial causation for psychiatric injuries, the Legislature presumably intended the new standard to apply to disability retirement claims of public employees.

The Court of Appeal also held that applying the amended version of Labor Code section 3208.3 did not impermissibly interfere with Pearl's vested pension rights. Instead, the law in force at the time of injury determines his recovery. Although Pearl's pension rights vested when he was hired, his right to increased benefits was contingent on his psychiatric injury, which occurred later. Thus, applying amended Labor Code section 3208.3 did not interfere with his vested rights, but modified a contingency or condition.

We granted review. We now reverse.

## DISCUSSION

The Legislature enacted the Public Employees' Retirement Law (Gov. Code § 20000 et seq.), "to effect economy and efficiency in the public service by providing a means whereby employees who become superannuated or otherwise incapacitated may, without hardship or prejudice, be replaced by more capable employees, and to that end provide a retirement system consisting of retirement compensation and death benefits." (*Id.* § 20001.) Under its provisions, certain persons, including police officers, are eligible for special disability retirement benefits if they are "incapacitated for the performance of duty as the result of an *industrial* disability." (*Id.* § 21151, italics added.) Thus, upon retirement for such a disability, a peace officer "shall receive a disability allowance of 50 percent of his or her final compensation plus an annuity purchased with his or her accumulated additional contributions, if any, or, if qualified for service retirement, the member shall receive his or her service retirement allowance if the allowance,

after deducting the annuity, is greater." (*Id.* § 21407.) These benefits are free from federal income taxes. (26 U.S.C. § 104(a)(1).)

Those employees retiring due to a *nonindustrial* disability receive a substantially smaller benefit: "Upon retirement for a nonindustrial disability, a local safety member [(Gov. Code, § 20420)] who has attained the minimum age at which he or she may retire for service without an actuarial discount because of age, shall receive his or her service retirement allowance." (Gov. Code, § 21405.) For purposes of the Public Employees' Retirement Law, *industrial* is defined as follows: " 'Industrial,' in reference to the . . . disability of any member of [the public employees' retirement] system who is in a membership category under which special benefits are provided by this part because the . . . disability is industrial, means disability . . . as a result of injury or disease arising out of and in the course of his or her employment as such a member." (Gov. Code, § 20046.) ▌ Under this standard, injury is compensable if the industrial component was " 'real and measurable.' " (*Bowen v. Board of Retirement* (1986) 42 Cal.3d 572, 578 [229 Cal.Rptr. 814, 724 P.2d 500].)

If the PERS Board of Administration (Board) disputes a claim that a disability is industrial, "the Workers' Compensation Appeals Board, using the same procedure as in workers' compensation hearings, shall determine whether the disability is industrial." (Gov. Code, § 21166.) In this context, the jurisdiction of the WCAB "shall be limited solely to the issue of industrial causation." (*Ibid.*)[1]

▌ The requirement that the WCAB, in making its determination of industrial causation, must use the same *procedure* as in workers' compensation hearings "implies pleadings, hearings, and notices of hearings, with opportunity to all parties to be heard, to be represented by counsel, and to submit pertinent oral and written evidence." (2 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (rev. 2d ed. 2001) Arbitration and Fact-Finding, § 33.02[4][d][i], p. 33-20.) The question in this case is whether Government Code section 21166 also implies the use of *substantive* workers' compensation law, including Labor Code section 3208.3, subdivision (b)(1), as amended in 1993. (Stats. 1993, ch. 118, § 1, p. 1225.) Labor Code section 3208.3, subdivision (b)(1) requires that "[i]n order to establish that a psychiatric injury is compensable, an employee shall demonstrate by a

---

[1]Under Government Code section 21156, if a medical examination and other available information show to the Board's satisfaction that "the member is incapacitated physically or mentally for the performance of his or her duties in the state service and is eligible to retire for disability . . . the board shall immediately retire him or her for disability . . . ." (Gov. Code, § 21156.) The Board found Pearl to be disabled. That determination, which did not address the causation question, has not been challenged.

preponderance of the evidence that actual events of employment were predominant as to all causes combined of the psychiatric injury."[2]

On its face, Government Code section 21166 does not require the WCAB to apply substantive workers' compensation law, and refers only to the same *procedure* used in workers' compensation hearings, i.e., the rules for presenting evidence and making findings of fact. Nor does Labor Code section 3208.3 clearly state that it applies to claims of psychiatric injury in matters *under the Public Employees' Retirement Law*, or otherwise indicate on its face that it supersedes the standard under Government Code section 20046, i.e., that a public employee's retirement disability is compensable if it results from "injury or disease arising out of and in the course of his or her employment as such a member." If the Legislature desires that a provision of substantive workers' compensation law apply in other types of compensation determinations, "all that it need do is to make its preemptive intent clear." (*Garrick v. Board of Pension Commissioners* (1971) 17 Cal.App.3d 243, 246 [94 Cal.Rptr. 598] [holding that statutory presumption (Lab. Code, § 3212.5) in workers' compensation law is inapplicable in pension proceedings].)

Indeed, subdivision (c) of Labor Code section 3208.3 appears expressly to limit the section to matters under workers' compensation law. It provides that "[i]t is the intent of the Legislature in enacting this section to establish a new and higher threshold of compensability for psychiatric injury *under this division*" (*ibid.*, italics added), i.e., division 4, commencing with Labor Code section 3200, of the workers' compensation law. Labor Code section 3208.3's reference to division 4 of the workers' compensation law indicates that its scope is confined to workers' compensation cases. (See *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1155 [77 Cal.Rptr.2d 445, 959 P.2d 752].)

In *City of Moorpark v. Superior Court*, we interpreted the phrase "this division" in a provision of the workers' compensation law. We observed that Labor Code sections 3600 and 3602, which establish the exclusivity of the workers' compensation remedy as against an employer, apply only to " '[l]iability for the compensation provided *by this division*' " (*City of Moorpark v. Superior Court, supra,* 18 Cal.4th at p. 1154, quoting Lab. Code, § 3600, subd. (a), italics added)—i.e., division 4 of the Labor Code—and

---

[2]Until 1989, the workers' compensation law required generally, including as to psychiatric injuries, that "[l]iability for the compensation provided by this division . . . shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees *arising out of and in the course of the employment* . . . ." (Lab. Code, § 3600, subd. (a), italics added.) Thus, the test for compensability was similar to that under Government Code section 20046, which then, as now, also referred to "injury . . . *arising out of and in the course of . . . employment.*" (Italics added.)

that Labor Code section 3207 further defined "compensation" as " 'compensation *under Division 4.*' " (*City of Moorpark v. Superior Court, supra,* 18 Cal.4th at p. 1154, italics added.) "Thus, the plain language of the exclusive remedy provisions of the workers' compensation law apparently limits those provisions to division 4 remedies. Remedies that the Legislature placed in other divisions of the Labor Code are simply not subject to the workers' compensation exclusive remedy provisions." (*Id.* at p. 1155; see also *Currie v. Workers' Comp. Appeals Bd.* (2001) 24 Cal.4th 1109, 1113 [104 Cal.Rptr.2d 392, 17 P.3d 749].) Thus, Labor Code section 3208.3's reach does not appear to extend, either expressly or impliedly, to retirement disability under the Public Employees' Retirement Law, a different legislative scheme.

Pearl applied for retirement disability under the Public Employees' Retirement Law. In determining the substantive question whether his injury was industrial, the WCAB therefore had to apply the definition under Government Code section 20046.[3]

The Court of Appeal, however, concluded that Labor Code section 3208.3 governs the threshold of industrial causation for psychiatric injuries under the Public Employees' Retirement Law. It reasoned that before enactment of Labor Code section 3208.3, courts similarly construed the definitions of industrial injury under the Public Employees' Retirement Law and the workers' compensation law. (See, e.g., *Board of Administration v. Ind. Acc. Com.* (1961) 195 Cal.App.2d 719, 724 [16 Cal.Rptr. 134] ["[I]t is clear that the 'industrial injury' within the meaning of the State Employees' Retirement law is essentially synonymous with 'injury' which is compensable under section 3600 of the Labor Code"].) On that basis, and because the statutes deal with the same general subject matter—the welfare of injured employees and their dependents—the Court of Appeal assumed that the Legislature intended Labor Code section 3208.3 to apply in determining whether psychiatric injuries are industrial under both the workers' compensation law and the Public Employees' Retirement Law. In other words, the Legislature intended to retain the same standard for compensable psychiatric injury under both systems.

The Court of Appeal erred. Before Labor Code section 3208.3's enactment in 1989, courts reasonably gave a similar construction to the similarly

---

[3]Because we determine, on statutory grounds, that Labor Code section 3208.3 is inapplicable, we need not, and do not, decide Pearl's additional claim that applying this provision would impermissibly interfere with his vested pension rights in violation of the federal and state Constitutions. (*Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 230 [45 Cal.Rptr.2d 207, 902 P.2d 225] [applying the " ' "well-established principle that this Court will not decide constitutional questions where other grounds are available and dispositive of the case" ' "].)

worded standards for industrial injury under Labor Code section 3600, subdivision (a), and Government Code section 20046. (See *United Public Employees v. City of Oakland* (1994) 26 Cal.App.4th 729, 733 [31 Cal.Rptr.2d 610] [statutes on the same subject of employee benefits and using the same statutory definition must be read together].) However, once the Legislature enacted Labor Code section 3208.3, it thereby eliminated what had been parallel language governing compensability of industrial injuries under the workers' compensation scheme and the Public Employees' Retirement Law. The enactment therefore undermines the rationale for similarly construing whether a psychiatric injury is industrial under the two statutory schemes.

As discussed, Labor Code section 3208.3 does not expressly provide that it apply to retirement disability claims under the Public Employees' Retirement Law. On the contrary, it refers to compensability under "this division," i.e., division 4 of the workers' compensation law. ■ Although both the Public Employees' Retirement Law and the workers' compensation law are aimed at the same general goals with regard to the welfare of employees and their dependents, they represent distinct legislative schemes. We may not assume that the provisions of one apply to the other absent a clear indication from the Legislature. (*Nickelsberg v. Workers' Comp. Appeals Bd.* (1991) 54 Cal.3d 288, 298 [285 Cal.Rptr. 86, 814 P.2d 1328]; cf. *People v. Goodloe* (1995) 37 Cal.App.4th 485, 491 [44 Cal.Rptr.2d 15] ["When a particular provision appears in one statute but is omitted from a related statute, the most obvious conclusion . . . is that a different legislative intent existed"].)

■ The Court of Appeal also reasoned that "[t]he Legislature did not amend Government Code section 21166 nor any other provision of [the Public Employees' Retirement Law] to *preclude* application of section 3208.3 to PERS disability determinations either when it enacted or amended section 3208.3." (Italics added.) This reasoning turns on its head the proper inquiry under *Garrick v. Board of Pension Commissioners, supra,* 17 Cal.App.3d at page 246, i.e., whether the Legislature clearly intended to *include* within Labor Code section 3208.3's reach the standard for industrial psychiatric injury under the Public Employees' Retirement Law. As discussed, we find no clear indication of that legislative intent. If the Legislature wanted Labor Code section 3208.3's standard to apply to the Public Employees' Retirement Law, it could have easily so stated. Where there is uncertainty on the point, we may not assume that the Legislature intended to amend the Public Employees' Retirement Law merely by implication. (*City of Sacramento v. Public Employees Retirement System* (1991) 229 Cal.App.3d 1470, 1488 [280 Cal.Rptr. 847] [provisions of the Public Employees' Retirement Law must be "liberally construed in favor of pensioners if they are ambiguous or uncertain"].)

The Court of Appeal also concluded that limiting the effect of Labor Code section 3208.3 to the workers' compensation law would produce an absurd result: eliminating fraudulent claims for psychiatric injuries in the workers' compensation law, while allowing such fraudulent claims to go unchecked in the retirement system. Referring to the legislative history of Labor Code section 3208.3, the Court of Appeal recognized the provision was the legislative response to "increased public concern about the high cost of workers' compensation coverage, limited benefits for injured workers, suspected fraud and widespread abuses in the system, and particularly the proliferation of workers' compensation cases with claims for psychiatric injuries."[4]

We disagree. As the legislative history expressly indicates, the Legislature enacted Labor Code section 3208.3 as part of a package of reforms to the *workers' compensation law*. PERS is distinct from the workers' compensation system, subject to different laws and governed by different administrative boards. Moreover, PERS includes a limited class of employees, like police and firefighters, whose employment subjects them to hazardous working conditions in the public interest. It is not absurd or illogical that the standards for benefits under the two systems might differ with regard to eligibility for specific benefits. Nor does the legislative history indicate any concern with fraud or abuse of PERS. Moreover, absent any showing of fraud or abuse by PERS members, we disagree with the Court of Appeal that public policy concerns justify applying Labor Code section 3208.3 in this matter.

Nor do we agree that the delegation of authority to the WCAB to make findings of industrial disability "would be meaningless" if it were prohibited from applying substantive workers' compensation law. As discussed, Government Code section 21166, which confers this authority, refers only to the *procedure* used in workers' compensation hearings. The WCAB has well-established rules of practice and procedure for conducting hearings concerning workers' injuries and ascertaining cognizable evidence of disability. Its factfinding expertise in this area does not depend on, or require, the application of *substantive* provisions of the workers' compensation law. (Cf. *Department of Justice v. Workers' Comp. Appeals Bd.* (1989) 213 Cal.App.3d 194, 203 [261 Cal.Rptr. 130] [WCAB has a circumscribed factfinding role under Lab. Code, § 4800, authorizing it to determine causation of injury but not eligibility for special statutory benefits].) Nor does the legislative history of Government Code section 21166 indicate any intent to incorporate substantive workers' compensation law.

---

[4]We grant Pearl's request for judicial notice of legislative history materials on Labor Code section 3208.3 and Government Code section 21166.

## DISPOSITION

We reverse the Court of Appeal's judgment and remand the matter with directions that the Court of Appeal annul the Workers' Compensation Appeals Board's order denying reconsideration, and that the Court of Appeal remand the matter to the Workers' Compensation Appeals Board for further proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., and Brown, J., concurred.